## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN GAVIRIA, on behalf of himself and all others similarly situated, | Case No. 2:20-cv-18552(KM)(JBC) |
| PLAINTIFF, | **AMENDED CLASS ACTION COMPLAINT** |
| - AGAINST - | |
| LINCOLN EDUCATIONAL SERVICES CORPORATION, | **JURY TRIAL DEMANDED** |
| DEFENDANT. | |

Plaintiff John Gaviria ("Plaintiff"), on behalf of himself and all others similarly situated, by and through the undersigned counsel, brings this class action against Defendant Lincoln Technical Institute Educational Services Corporation ("LESC," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend Lincoln Technical Institute or Lincoln College of Technology (collectively "Lincoln Tech") for in person hands-on educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19") and had their course work moved to online only learning and failed to receive all the services for which they paid.

2.      Students, like Plaintiff, were required to pay tuition and Mandatory Fees to attend Lincoln Tech. Tuition and Mandatory Fees prices vary based on campus location and program but

were on average approximately $29,000.00 for tuition, books, and uniforms. Mandatory Fees typically included approximately $1,200.00 for tools, a $100.00 registration fee, a $150.00 technology fee, and a $650.00 student fee.

3.      Lincoln Tech has not refunded any amount of the tuition or any of the Mandatory Fees, even though it canceled substantially all in-person classes on or about March 16, 2020, and Lincoln Tech began the transition to online-only learning starting on March 17, 2020.

4.      Because of LESC's response to the COVID-19 pandemic, on or about March 16, 2020, LESC also stopped providing the educational services or facilities the tuition and Mandatory Fees were intended to cover.

5.      LESC's failure to provide the full services for which tuition and the Mandatory Fees were intended to cover since approximately March 16, 2020 constitutes a breach of the contracts between LESC and Plaintiff and the members of the Class and is unjust.

6.      In short, Plaintiff and the members of the Class have all paid for tuition for a vocational education delivered on-campus, with in-person educational experiences and all the benefits offered by an in-person, on-campus college, such as LESC. Instead, students like Plaintiff were provided a materially different alternative which he did not agree to, and which constitutes a breach of the contracts entered into by Plaintiff with LESC.

7.      As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities that were simply not fully provided.

8.      This failure also constitutes a breach of the contracts entered into by Plaintiff with Lincoln Tech. In the alternative, it is unjust.

9.      Rather than offer partial refunds, credits, or discounts to students like Plaintiff and the Class and balance the financial difficulties associated with COVID-19, Defendant has instead

elected to place the financial burden entirely upon its students by charging them full tuition and full Mandatory Fees when the services Lincoln Tech provided were not the full educational opportunities, experiences, and services that Plaintiff and the Class bargained for, contracted for, and paid for.

10.     Plaintiff does not challenge Defendant's compliance with the COVID-19 government orders that were in place in New Jersey or across the country or its process for awarding degrees. Rather, Plaintiff challenges Defendant's decision to retain monies paid by students like Plaintiff and refuse to offer any refunds, provided any discounts, or apply any credit to Plaintiff and Class members' accounts when Defendant failed to provide the in-person and on-campus services that were bargained for, promised, and agreed to.

11.     Notwithstanding any argument that LESC had no choice but to transition to an online-only educational model with limited campus access due to government orders then in effect, there was no government or municipal order in place that required Defendants to retain the full amount of tuition and the full amount of fees from Plaintiff. And there is no argument that the retention of Plaintiff's tuition and fees was done for the health and safety of students, faculty, staff, or the public at large.

12.     Defendant elected to retain the full amount of tuition and the full amount of fees, despite being unable to provide the services that Plaintiff bargained for, contracted for, and paid for.

13.     Plaintiff is challenging Defendant's decision to retain the full amount of Plaintiff and the Class's tuition and fees, as that decision was not undertaken pursuant to the exercise of statutory authority or any government order or regulation.

14. Plaintiff seeks, for himself and the Class members, LESC's disgorgement and return of a pro-rated portion of their tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters or terms when LESC closed and switched to online-only learning. The return of such amounts would compensate Plaintiff and the Class members for damages sustained by way of Defendant's breach.

15. Plaintiff seeks, for himself and the Class members protections including injunctive and declaratory relief protecting Class Members from paying the full cost of tuition and Mandatory Fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendant can actually safely provide.

## PARTIES

16. Plaintiff John Gaviria was a student at Lincoln Tech beginning on February 3, 2020 and has an expected graduation date of February 2021. Lincoln Tech charged Plaintiff approximately $19,664.00 in tuition and $496.00 in Mandatory Fees, specifically, a $400 Student Fee, and a $96.00 Technology Fee. Additionally, Plaintiff Gaviria was charged a $150.00 for a Registration Fee.

17. Plaintiff Gaviria is a resident of Orange, New Jersey.

18. Defendant LESC is a publicly-traded company that provides career-oriented post-secondary education through for-profit postsecondary institutions under a number of different brand names, including Lincoln Technical Institute. LESC is headquartered in West Orange, New Jersey.

19. LESC owns and operates Lincoln Tech campuses throughout the United States including New York, New Jersey, Connecticut, Maryland, Massachusetts, Pennsylvania, Rhode Island, Colorado, Georgia, Illinois, Indiana, Texas, Tennessee, Kentucky, and Nevada.

20.     Defendant's programs include students from many, if not all, of the states in the country. Defendant is a citizen of New Jersey.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs, and is a class action in which one or more of the other Class members are citizens of a State different from the Defendant.

22.     This Court has personal jurisdiction over Defendant because Defendant was incorporated in the State of New Jersey and has its principal place of business in New Jersey.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant is a citizen in this District and its located within this District.

24.     Plaintiff attended Lincoln Tech in this District and in the State of New Jersey.

## FACTUAL ALLEGATIONS.

25.     Plaintiff and Class Members paid tuition and Mandatory Fees to attend Lincoln Tech. Lincoln Tech begins courses on a rolling basis throughout the year. For example, the campus Plaintiff Gaviria attended in Mahwah, New Jersey had programs that started before and throughout the Covid-19 pandemic, including throughout February, March, April, May, June, July, August September, October, November, and December of 2020, with classes scheduled to continue until as late as October 2021.

26.     Students, like Plaintiff, were required to pay tuition to attend Lincoln Tech. Tuition and Mandatory Fees prices vary based on campus location and program but were on average approximately $29,000.00 for tuition, books, and uniforms. Mandatory Fees typically included approximately $1,200.00 for tools, $100.00 for a registration fee, $150.00 for a technology fee,

and $650.00 for a student fee.

27.      Plaintiff and the members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semesters.

28.      The on-campus and in-person services promised by LESC are material to the contract because the of highly technical and mechanical areas of education promoted by LESC and sought by the Plaintiff.

29.      Defendant priced the cost of tuition based on the assumption of a full term of in-person and on-campus learning.

30.      Upon information and belief, Defendant priced the Mandatory Fees based on the services that students like Plaintiff would receive via in-person instruction and services.

31.      Throughout March 2020, LESC made public announcements adjusting educational services and opportunities that affected Plaintiff and the Class.

32.      All classes since March 16, 2020 until August 2020 were offered almost exclusively in a remote online format with no in-person instruction or interaction. After August 2020, only a small portion of classes had any in-person instruction and/or interaction.

33.      The services for which the Mandatory Fees were assessed were also partially terminated or cancelled at or about this time, such as access to Lincoln Tech's equipment and educational facilities, programs or services.

34.      As a result of Defendant's response to the Coronavirus, Plaintiff and the Class were denied the complete access to such facilities, services, and technology despite paying the Mandatory Fees.

35.      Lincoln Tech has not provided reimbursement or refund information regarding tuition or the Mandatory Fees.

36.     No government orders were in place that required Defendant to retain Plaintiff's tuition and fees.

37.     No governmental orders were in place that required Defendant to retain Plaintiff's tuition and fees for public healthy or safety.

38.     Students attending Lincoln Tech's did not choose to attend an online only institution of higher learning, but instead chose to enroll in Lincoln Tech's in-person educational programs with the understanding that Lincoln Tech would provide in-person educational opportunities, services, and experiences. This learning environment is particularly important considering the labor-intensive and highly technical programs offered by LESC through Lincoln Tech.

39.     Plaintiff did not apply to, enroll at, register for classes at, or make payments for classes at Lincoln Tech for online only educational services.

40.     The terms of the contract entered between Plaintiff and Defendant were formed through the application process, the admission process, the registration process, the payment process, and throughout enrollment, and these terms are contained in numerous documents, including the acceptance letter, the application, the course catalog, the student handbook, and other documents that are not presently available to the Named Plaintiff.

41.     On its website and in its documents including marketing materials, admissions materials, enrollment documents, or registration documents, Lincoln Tech touts LESC's in-person and hands-on experience and opportunities as a benefit to students, stating, for example "Lincoln's mission is to provide superior education and training to our students for in-demand careers in a supportive, accessible learning environment, transforming student's lives and adding value to their

communities."[1]

42.     Defendant marketed and emphasized the in-person experiences and highly specialized technical training available to Lincoln Tech. students, including, for example, in the below materials:



---

[1] MISSION STATEMENT & BRAND PROMISE, LINCOLN TECHNICAL INSTITUTE, https://www.lincolntech.edu/about/our-promise (last visited Nov. 30, 2020).







43.     Further, the official school catalog, which Plaintiff and the class relied upon in selecting courses at Lincoln Tech, describes Lincoln Tech's educational philosophy, in relevant part, as seeking to prepare their students to meet day-to-day challenges of an ever-changing world, accomplished through lectures, followed by "[a] comprehensive hands-on laboratory exercise on

a variety of trainers allows the student to practice newly learned skills." [2]   Lincoln's "Educational Philosophy" also provides that, "[h]ands-on practical exercises on Real-World equipment allows the student to experience tasks performed in the workplace [. . . .] Classroom instruction will always lead to 'hands-on' teaching and learning to apply the knowledge learned in the classroom."

44.   Further conveying the nature of this promise and the services offered by the institute, Lincoln Tech states, "By training on computers and other appropriate equipment you can gain the skills to qualify for the best employment opportunities. To prospective employers, such instant productivity is invaluable and it's just a part of what sets Lincoln Technical Institute graduates apart from the others."

45.   Other documents conveyed the promises of in-person and on-campus educational services. [3]

46.   Lincoln Tech was unwilling or unable to offer the educational or similar experiences as detailed in the marketing materials and documents provided to Plaintiff and similarly situated individuals because of COVID-19.

47.   Lincoln Tech uses its website, promotional materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its specialized technical facilities.

48.   For example, on its website Lincoln Tech states:

"Lincoln Tech's Mahwah campus provides fully-equipped training facilities and real-world tools and equipment to help you prepare for a new hands-on career: 16 fully-functioning auto bays with lifts and equipment for hands-on practice with

---

[2] LINCOLN TECHNICAL INSTITUTE-ALLENTOWN CAMPUS,  *Official School Catalog, Vol. XXVII*, 4 (Jan. 2020), https://lincolntech.edu/sites/default/files/download/consumer/Allentown_GII_CSC.pdf ; LINCOLN TECHNICAL INSTITUTE-MAHWAH CAMPUS, *Official School Catalog*, *Vol. XXIV*, 4 (Nov. 2018), https://www.lincolntech.edu/sites/default/files/download/consumer/Mahwah_GII_CSC.pdf.
[3] Many of these records are not in the possession, custody, or control of Plaintiff at this stage of the litigation and many, if not all, of them are in the possession and control of Defendant.

engines, fuel systems, diagnostics, transmissions and more, more than 20 vehicles on site, drive-in classrooms, outdoor "Green House" for hands-on energy efficiency testing, the Haas Technical Education Center (HTEC), sponsored by Haas Automation and featuring computerized manufacturing machines where students practice programming and operating the equipment that drives modern manufacturing facilities."[4]

49.     As a result of COVID-19, the online-only learning options offered to Lincoln Tech's students were materially different in practically every aspect as compared to what the educational experience promised to Plaintiff and the members of the Class.  During the online portion of the terms affected by Covid-19, Lincoln Tech used programs by which previously recorded lectures were posted online for students to view on their own or by virtual meetings.

50.     Therefore, there was a lack of hands-on and in-person instruction, training with equipment, and interaction among instructors and students, and among students that was expected as per typical in person learning settings.

51.     LESC itself recognizes the distinction between online-only and in-person education; in fact, in a December 2020 revision to the Lincoln Tech-Mahwah Campus catalog, LESC added a new disclosure for Career Program description in its catalog distinguishing between "Residential, Blended Learning, or Online" delivery of education.[5]

---

[4] LINCOLN TECH MAHWAH NJ CAMPUS - AUTO & SKILLED TRADES, https://www.lincolntech.edu/campus/mahwah-nj (last visited Nov. 30, 2020).

[5] *See, e.g.* LINCOLN TECH MAHWAH CAMPUS 2020-2022 OFFICIAL SCHOOL CATALOG at 7 (rev'd Dec. 2020), Volume XXV, https://www.lincolntech.edu/sites/default/files/download/consumer/Mahwah_GII_CSC.pdf  (last visited Mar. 3, 2020) (Mode of delivery: Residential, Blended Learning or Online are the methods we may use to deliver content in each course. The Residential courses are offered on ground at the campus. Blended courses are offered by delivering a fraction of the course in an online format as well as traditional face to face method. Online courses are delivered 100% online. The Blended delivery and Online delivery plan will implement distance education activities into each course in the program of study. The use of simulations, case studies, assessments and multimedia will be used to enhance the students understanding of the learning objectives outlined in the course syllabus."). *Compare Id.*, with LINCOLN TECH. SOUTH PLAINFIELD CAMPUS 2019-2021 COURSE CATALOG at 7 (rev'd Mar. 2019) *available at https://www.lincolntech.edu/sites/default/files/download/consumer/South-Plainfield_GII_CSC.pdf* (last visited Mar. 3, 2021) (no "Mode of Delivery" disclosure for career program descriptions in 2019 catalog

52.     Certain online formats being used by Lincoln Tech do not provide the bargained-for development of strong mechanical, physical, and memorization skills given the absence of the hands-on training and instruction.

53.     Students, like Plaintiff, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

54.     Students like Plaintiff and the class were denied nearly all access to facilities, which include specialized workshops, garages, libraries, laboratories, computer labs, equipment, and specialized tools, which are integral to Lincoln Tech's educational services and for which Plaintiff paid a premium.

55.     Students like Plaintiff and the Class were denied access to nearly all activities offered by Defendant meant to foster intellectual and academic development and independence, and networking for future careers.

56.     Lincoln Tech priced the tuition and Mandatory Fees based on the in person educational services, opportunities and experiences it was providing on campus.

57.     Lincoln Tech has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for during the semesters affected by Covid-19.

58.     Lincoln Tech has not refunded any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased the full operation of services and facilities for which the Mandatory Fees covered.

59.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the remaining days of that semester after classes moved from in-person to online and facilities were closed, and for the future semesters where in-person

revision).

classes are cancelled and moved online.

60.     Defendant's practice of failing to provide reimbursements for tuition and the Mandatory Fees despite the materially different education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this case individually and, pursuant to FRCP 23, on behalf of the class defined as:

> All persons who paid, or will pay, tuition and/or the Mandatory Fees for a student to attend in-person class(es), at any Lincoln Tech campus throughout the United States, during any semester or term affected by Covid-19 at Lincoln Tech but had their educational experiences and class(es) moved to online only learning (the "Class").

62.     Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

63.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of FRCP 23 and other statutes and case law.

64.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, LESC has reported approximately 10,000 or more students were enrolled for the 2019-2020 school year. The names and addresses of all such students are known to LESC and can be identified through LESC's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

65.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members.  These questions predominate over questions that may affect only individual members of the Class because Lincoln Tech has acted on grounds generally applicable to the classes.  Such common legal or factual questions include, but are not limited to:

a.     Whether Lincoln Tech accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semesters or terms affected by Covid-19;

b.      Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with the full in-person and on-campus live education after March 16, 2020;

c.     Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the full services and facilities to which the Mandatory Fees pertained after mid-March 2020;

d.     Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide them with the full in-person and on-campus live education after March 16, 2020;

e.     Whether Defendant was unjustly enriched by retaining all of the tuition and the Mandatory Fees during the time when Lincoln Tech has been closed, and Plaintiff and the members of the Class have been denied the full in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees was paid;

f.     Whether Defendant intentionally interfered with the rights of the Plaintiff and the Class when it cancelled all in-person classes and provided a mostly remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued the full services for which the Mandatory Fees was intended to pay, all while retaining the tuition and the Mandatory Fees paid by Plaintiff and the Class; and

g.     The amount of damages and other relief to be awarded to Plaintiff and the Class members.

16

66.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fees that they paid, that LESC stopped providing in mid-March.

67.     Plaintiff is a more than adequate class representative.  In particular:

a)      Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

b)      because his interests do not conflict with the interests of the other Class members who he seeks to represent;

c)      no difficulty is anticipated in the management of this litigation as a class action; and

d)      Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

68.     Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

69.     It is impracticable to bring the individual claims of every Class member before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  A class action is superior to other available methods

17

for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against LESC.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

70.      Plaintiff also seeks class certification for injunctive and declaratory relief under FRCP 23(b)(2) and (b)(3), at the appropriate juncture.

## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

71.      Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

72.      Plaintiff brings this claim individually and on behalf of the members of the Class.

73.      By accepting LESC tuition and the Mandatory Fees, LESC agreed to, among other things, provide an in-person and on-campus live education as well as the highly specialized services and facilities to which the Mandatory Fees that was paid pertained to throughout those semesters.  The terms of the parties' contractual relationship are set forth in publications from Defendant, including the Course Catalog.

18

74.     Plaintiff and Class members entered binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of the Catalogs, Defendant's publications, acceptance letters, admission materials, registration materials, payment materials, and Defendant's usual and customary practice of providing on-campus and in-person services.

75.     For example, the Course Catalog provided Plaintiff and Class Members with information regarding the courses offered, including the type of training students would receive.

76.     Prior to beginning the semester or terms affected by Covid-19, and prior to paying tuition and fees, Plaintiff consulted that Course Catalog and enrolled in courses. In consulting the Course Catalog, Plaintiff understood and believed that every course in which he enrolled was to be taught in-person. Plaintiff's understanding and belief was based on the course specifying an on-campus location where the course would be taught, as well as that the courses were not listed as hybrid or online on the Course Catalog. Thus, the in-person nature of the course was part of the benefit of the bargain, and Plaintiff would not have paid as much, if any, tuition and fees for the semesters or terms at LESC had he known that the course would not, in fact, be taught in-person.

77.     Plaintiff Gaviria paid tuition and Mandatory Fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Gaviria has not been provided a pro-rated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fees he paid after LESC's facilities were closed and events were cancelled.

78.     Lincoln Tech has held that its in-person educational opportunities, experiences, and services are of substantial value.

79.     Lincoln Tech agreed to provide in-person educational opportunities, experiences, and services to enrolled students.

80.     Lincoln Tech promoted its in-person educational services as an important part of students' educational experiences and their development.

81.     In marketing materials and other documents provided to the Named Plaintiff, Defendant promoted the value of the in-person education experiences, opportunities, and services that Defendant provided.

82.     In marketing materials and other documents provided to the Named Plaintiff, Defendant promised to provide those in-person education experiences, opportunities, and services in exchange for the payment of tuition and a Mandatory Fees.

83.     Defendant provided Plaintiff with an acceptance letter that the Named Plaintiff accepted based on the promise of in-person educational experiences, opportunities, and services that Defendant would provide.

84.     These promises of in-person and on-campus educational services were material to Plaintiff.

85.     LESC has breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees pertained throughout the semesters affected by Covid-19 and retaining monies paid by Plaintiff and the Class for a live in-person education and access to these services and facilities during these semesters.

86.     Plaintiff did not enroll or register for online-only learning with no in-person access or services.

87.     Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

88.     Plaintiff and members of the Class have performed all of the obligations on them pursuant to their agreement – including by making such payments or securing student loans or scholarships to pay for such education.

89.     Plaintiff and the members of the Class have suffered damage as a direct and proximate result of LESC's breach in the amount of the prorated portion of the tuition and Mandatory Fees they each paid during the portion of the semesters affected by Covid-19 in which in-person classes were discontinued and facilities were closed by LESC.

90.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiff and Class Members that related to those in-person educational services that were not provided after Lincoln Tech shut down on or around March 16, 2020.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

91.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

92.     In the alternative, Plaintiff brings this claim for unjust enrichment individually and on behalf of the members of the Class.

93.     By paying Lincoln Tech tuition and the Mandatory Fees LESC agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees that was paid pertained to throughout the semester.

94.     Defendant conveyed in writing in documents and in other materials to Plaintiff and similarly situated individuals that it would provide in-person educational services, opportunities,

21

and experiences designed to provide students with opportunities in highly technical career paths.

95.    Defendant conveyed in writing in documents and in other materials that Plaintiff and similarly situated individuals would have access to the services for which they paid the Mandatory Fees.

96.    Defendant has retained the benefits of the amount of tuition and Mandatory Fees that Plaintiff and similarly situated individuals has provided – without providing the benefits that Plaintiff is owed.

97.    For example, Defendant failed to provide Plaintiff and Class Members full access to on-campus facility after in or around March 16, 2020. Yet Defendant assessed Plaintiff with tuition and the Mandatory Fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

98.    Plaintiff was not able to access such facilities or services remotely.

99.    Plaintiff paid tuition and Mandatory Fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Lincoln Tech has previously marketed, promoted, or made available prior to Covid-19.

100.   The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

101.   Defendant has been unjustly enriched by Plaintiff's payment of tuition and the Mandatory Fees.

102.   Despite not being able to provide all services, Lincoln Tech failed to provide reimbursements for tuition and the Mandatory Fees despite the materially different education and other experiences that it provided, and the reduced benefits associated with the fee.

103.    Defendant was not required to retain Plaintiff's prorated Tuition and Mandatory Fees by any government order, regulation, or requirement then or current in effect.

104.    Plaintiff and members of the Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

105.    Defendant's act was unjust for them to keep money for services they did not render.

106.    Defendant should be required to disgorge all profits resulting from such overpayments and establish a constructive trust from which Plaintiff and Class Members may seek restitution.

## THIRD CAUSE OF ACTION
## CONVERSION
### (On Behalf of Plaintiff and the Class)

107.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

108.    Plaintiff brings this claim individually and on behalf of the members of the Class.

109.    Plaintiff and members of the Class provided LESC with property in the form of funds (tuition and the Mandatory Fees), in exchange for in person on campus services, facilities and face to face instruction.

110.    LESC exercises control over Plaintiff's and Class members' property.

111.    LESC intentionally interfered with Plaintiff's and the Class members' property when it unilaterally moved all in-person classes to a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services for which the Mandatory Fees was intended to pay, all while retaining the tuition and Mandatory Fees paid by Plaintiff and the Class.

112.    Class members demanded the return of their property proportionate to the reduction in benefit for education and services during the semester or terms when in-person and on-campus live education, and access to LESCLESC's services and facilities were unavailable.

113.    LESC's retention of the tuition and Mandatory Fees paid by Plaintiff and the Class without providing the services for which they paid, deprived Plaintiff and Class of the benefits for which the tuition and Mandatory Fees was paid, and of their funds paid for those benefits.

114.    LESC converted Plaintiff's property (tuition and fees) into revenue for LESC without providing the services Plaintiff paid for.

115.    Thus, Defendant converted and took that property[6] from Plaintiff.

116.    Plaintiff and the Class members are entitled to the return of the pro-rated amounts of tuition and the Mandatory Fees each paid equal to the reduction in benefit for education and services during the semesters or terms when in-person and on-campus live education, and access to LESC's services and facilities were unavailable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

---

[6] Indeed, colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, as these institutions are frequently required to issue refunds to the government and the student for instances where the student enrolls, but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"), Title IV, governs federally funded student financial aid programs for college and post-secondary vocational training. *See* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.).  The HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student.  *Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996).  Thus, it is beyond dispute that any college or university receiving any tuition payments through government-provided financial aid must be able to account for what was paid for each individual student.  This means that each student's tuition funds must be capable of being separately identified and sequestered, and a claim for conversion of those funds can be properly sustained.  Moreover, discovery will flesh out more information about the particular accounting practices employed by Defendant.

(a)     For an order certifying the Class under the FRCP and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: March 5, 2021                    Respectfully submitted,

**THE SULTZER LAW GROUP P.C.**

_____
Joseph Lipari, Esq.
liparij@thesultzerlawgroup.com
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (917) 444-1960

&

Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
Brett R. Cohen, Esq.
Anthony Alesandro, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
bcohen@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

*Counsel for Plaintiff and Proposed Class*