UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN GAVIRIA, on behalf of himself and all others similarly situated,** <br><br> **Plaintiff,** <br><br> v. <br><br> **LINCOLN EDUCATIONAL SERVICES CORPORATION,** <br><br> **Defendant.** | Civ. No. 20-18552 (KM) (JBC) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Lincoln Educational Services Corporation ("Lincoln Tech") operates for-profit vocational education institutions. John Gaviria began as a student at one such institution, but shortly after his enrollment, Lincoln Tech transitioned to online education in response to the COVID-19 pandemic. Gaviria, on behalf of himself and a putative class, sued Lincoln Tech to recover tuition and fee payments under contract, quasi-contract, and tort theories. Lincoln Tech moves to dismiss for failure to state a claim. (DE 12.)[1] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I. **BACKGROUND**

Lincoln Tech provides vocational and technical education programs at campuses throughout the country. (Am. Compl. ¶¶ 19, 28.) It publicly

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry

Am. Compl. = Amended Complaint (DE 10)

Mot. = Lincoln Tech's Brief in Support of its Motion to Dismiss (DE 12-2)

Opp. = Gaviria's Opposition to Lincoln Tech's Motion to Dismiss (DE 14)

Reply = Lincoln Tech's Reply Brief (DE 15)

Agmt. = Enrollment Agreement (DE 12-4)

promotes the hands-on training its courses offer. (*Id.* ¶¶ 41–48.) Gaviria enrolled in courses at a Lincoln Tech campus in, alas, February 2020. (*Id.* ¶ 16.) He paid over $19,000 for tuition as well as a $400 "Student Fee," a $96 "Technology Fee," and a $150 "Registration Fee." (*Id.*)

The next month, in response to government orders related to COVID-19, Lincoln Tech transitioned to providing courses online and closed the campus. (*Id.* ¶¶ 10, 31, 32, 34.) Such virtual education is "materially different in practically every aspect" from in-person instruction, according to Gaviria. (*Id.* ¶ 49.) Yet Lincoln Tech has not offered even a partial refund. (*Id.* ¶ 35.)

To recover his tuition and fee payments, Gaviria sued Lincoln Tech, asserting claims for (1) breach of contract, (2) unjust enrichment, and (3) conversion (*Id.* ¶¶ 71–116.) He invokes jurisdiction under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in pertinent part at 28 U.S.C. §§ 1332(d), 1441, 1446). (Am. Compl. ¶ 21.)[2] He alleges that a contract formed between him and Lincoln Tech "through the application process, the admission process, the registration process, the payment process, and throughout enrollment." The terms of that contract "are contained in numerous documents, including the acceptance letter, the application, the course catalog, the student handbook, and other documents." (*Id.* ¶ 40.)

---

[2]     According to the Amended Complaint, both Gaviria and Lincoln Tech are citizens of New Jersey. (Am. Compl. ¶¶ 17, 22.) While this would preclude diversity jurisdiction in an ordinary case, CAFA allows for jurisdiction if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). This language encompasses unnamed plaintiffs. *Gallagher v. Johnson & Johnson Consumer Cos.*, 169 F. Supp. 3d 598, 602 (D.N.J. 2016) (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193 n. 24 (11th Cir. 2007)). Gaviria alleges that Lincoln Tech has institutions throughout the United States, serving students from several states. (Am. Compl. ¶¶ 19–20.) He seeks to represent a national class. (*Id.* ¶ 61.) Because the putative class would include non-New Jersey citizens, and Lincoln Tech does not challenge the veracity of these jurisdictional allegations, I will assert jurisdiction under CAFA.

Lincoln Tech has moved to dismiss the complaint. (Mot., DE 12) With its motion, Lincoln Tech provided an "Enrollment Agreement" signed by Gaviria. That Agreement included a few provisions relevant here:

- an acknowledgment that an online "course companion platform and/or courseware may be used throughout all or some of the program" (Agmt. at 5);
- an acknowledgment that the registration fee was non-refundable, and after the third day of classes, "any refund due for student fees and technology fees will be prorated based upon use" (*id.* at 8);
- a clause stating that Lincoln Tech is released from claims that it did not perform if such non-performance was due to "an Act of God, strike or any other matter or thing beyond [its] control" (*id.* at 9);
- a clause stating that Lincoln Tech "reserves the right to alter hours of attendance and curriculum content or class starting dates when deemed necessary," and such changes will not alter the refund policy (*id.*); and
- an acknowledgment that the Agreement "constitutes the entire contract between the parties and that no representations other than herein contained have been made" (*id.*).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint

as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III. DISCUSSION

In support of dismissal, Lincoln Tech argues that (A) it is immune from this suit, and (B) Gaviria fails to state a claim.

### A. Immunity

Lincoln Tech argues that it is immune from this suit under the New Jersey Emergency Health Powers Act, N.J. Stat. Ann. § 26:13-1 *et seq.* (Mot. at 7–10.) The Act generally grants the New Jersey Governor and other state officials certain powers to act in an emergency. *See Nat'l Ass'n of Theater Owners v. Murphy*, Civ. No. 20-8298, 2020 WL 5627145, at *5–6 (D.N.J. Aug. 18, 2020). As relevant here, it provides as follows:

> A person or private entity . . . shall not be liable for an injury caused by any act or omission in connection with a public health emergency . . . provided that the action of the person or entity is undertaken pursuant to the exercise of the authority provided pursuant to this act, including any order, rule or regulation adopted pursuant thereto.

N.J. Stat. Ann. § 26:13-19(c)(2). There are no reported judicial interpretations of this provision, nor is there any illuminating legislative history. It is no doubt broadly written and could plausibly apply here. Lincoln Tech acted in accordance with government orders issued to address a public health emergency, the COVID-19 pandemic. But Lincoln Tech's statutory defense stumbles over the term "injury."

Under the Act, an entity is exonerated from liability for an "injury," which is defined as "death, injury to a person or damage to or loss of property." N.J. Stat. Ann. § 26:13-19(a). When the Legislature defines a term, I am bound by the plain language of that definition. *State v. S.B.*, 165 A.3d 722, 726 (N.J. 2017). And when the Legislature uses a term that has an established legal meaning, I will interpret the term in light of its common-law meaning, absent any indications to the contrary. *State v. Brown,* 126 A.2d 161, 166 (N.J. 1956); *In re Commitment of B.L.*, 787 A.2d 928, 937 (N.J. Super. Ct. App. Div. 2002).

While the Legislature instructed that the Act be "liberally construed," N.J. Stat. Ann. § 26:13-19(d), I cannot stretch a statute's terms beyond what its ordinary meaning and reasonable interpretations can bear, *Lammers v. Bd. of Educ. of Borough of Point Pleasant*, 633 A.2d 526, 530 (N.J. 2003).

Lincoln Tech says this case is about "loss of property" (part of the definition of "injury"), but "property" is not normally understood to include money or damages (what Gaviria seeks here). "Property" traditionally refers to "land, chattel, or an intangible." *Property*, Black's Law Dictionary (11th ed. 2019). Money is not land or an intangible, so that leaves chattel. Yet, chattel is "[m]ovable or transferable property," especially "a physical object capable of manual delivery." *Chattel*, Black's Law Dictionary (11th ed. 2019). As such, "Money is not to be accounted Goods or Chattels." *Id.* (quoting Thomas Blount, *Nomo-Lexicon: A Law-Dictionary* (1670)).

New Jersey law comports with this understanding. Consider the tort of conversion, "the intentional exercise of dominion and control over chattel." *Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 222 A.3d 649, 661 (N.J. 2020). Generally in New Jersey, a plaintiff cannot bring a conversion claim alleging that he or she is owed money. Rather, at most, he or she must point to a specific pot of money, such as a fund, that is wrongfully in a defendant's hands. *Dougherty v. Drew Univ.*, Civ. No. 21-249, 2021 WL 1422935, at *10 (D.N.J. Apr. 14, 2021).

Next, consider other New Jersey statutes. The Legislature has created several causes of action to recover "loss of moneys or property." *E.g.*, N.J. Stat. Ann. §§ 2C:13-8.1(a), 2C:21-17.4(a), 56:8-19. By using "money" in addition to "property," the Legislature suggests that the two are distinct. *See State v. Ferguson*, 207 A.3d 1253, 1267 (N.J. 2019) (when the Legislature uses two different terms, courts assume they have different meanings). The Legislature's employment of this double-barreled terminology elsewhere, but not here, would tend to reinforce a conclusion that the Act refers only to real or personal property. *See In re J.S.*, 121 A.3d 322, 334 (N.J. 2015) ("[The Legislature] is

presumed to have been thoroughly conversant with its own prior legislation . . . ." (cleaned up)); *State v. Sherman*, 842 A.2d 859, 870–71 (N.J. Super. Ct. App. Div. 2004) ("[W]here the Legislature has carefully employed a term in one place and excluded it in another, it shall not be implied where excluded." (citation omitted)).[3]

These considerations—second-order ones, to be sure, in the absence of more specific guidance—point to a conclusion that "property" (and therefore Lincoln Tech's immunity) does not extend to money damages.[4] Damages are what Gaviria sues for here. Gaviria seeks compensation representing the difference in value between the virtual education that was provided and the in-

---

[3] To some degree, the neighboring words in the Act may tend to suggest that "property" does not encompass money or monetary damages. *See Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 557 (N.J. 2013) (interpreting statutory term in the context of its neighboring words and avoiding interpretations that would negate those neighboring words). "Property" appears in the phrase "damage to or loss of property." The words "damage to" suggest that property is something physical, either land or an object—but not money. That is so because, in ordinary usage, one does not do "damage to" money.

That said, the statutory wording, because it uses "or" rather than "and," does not rule out either side's interpretation of the word "property." It may simply be an imprecise invitation to mix and match as appropriate. Consider, for example, an inelegantly phrased law providing that it is forbidden to drive or pedal a vehicle. "Pedal" suggests that a "vehicle" is a bicycle—but "drive" suggests that it is not. "Drive" suggests that a vehicle is a car, but "pedal" suggests that it is not. Yet we probably would not say that this hypothetical statute does not cover either one, because a bicycle cannot be driven and a car cannot be pedaled. So too, although this statutory wording does not rule out Lincoln Tech's reading, it does not compel it, either.

[4] Nonetheless, Lincoln Tech points to a single oral opinion from a New Jersey trial court finding that a university was immune under the Act from similar claims. (DE 12-2; Tr., *Mahmood v. Rutgers*, No. L-3039-20 (N.J. Super. Ct. L. Div. Dec. 7, 2020).) The court reasoned that money was property or, alternatively, education is a property right. (*Id.* at 32:8–10.) But I am not bound by a state trial court decision. *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 n.9 (3d Cir. 2004). Nor do I find the decision worthy of deference because it summarily concluded that money was property yet did not engage with any statutory interpretation analysis of the term "property," as I do here. *See Dougherty*, 2021 WL 1422935, at *5 n.4 (declining to follow state trial court decision that lacked analysis). And as I have already explained, education is not a form of property recoverable in a lawsuit like that here. *Id.* at *9.

6

person education that he expected. He does not move to recover a specific, improperly retained pot of money, but rather seeks compensation in a yet-to-be-determined amount. (Am. Compl., Prayer (c).) Such benefit-of-the-bargain damages are the "traditional remedy for breach-of-contract." *Goldfarb v. Solimine*, 245 N.J. 326, 245 A.3d 570, 577 (N.J. 2021) (contract damages usually represent the "loss of the benefit of the bargain" and seek "to put the injured party in as good a position as if performance had been rendered" (citations omitted)). Those damages do not equate to traditional notions of "property." *Dougherty*, 2021 WL 1422935, at *10.

Accordingly, I hold that Gaviria does not sue based on an "injury" for which the Act provides immunity.

## B. Failure to State a Claim

Turning to the merits, I first consider Gaviria's three claims (breach of contract, unjust enrichment, and conversion) as they relate to tuition charges, and second as they relate to fees.

### 1. Tuition Claims

The tuition claims fail for two independent reasons: (a) Gaviria does not allege facts that would overcome the *Beukas* standard, and (b) even if the matter is viewed as a standard breach of contract case, the Enrollment Agreement stands as a bar.

#### a. *Beukas* Standard

As I explained more fully in *Dougherty*, New Jersey courts have declined to treat claims by students against universities as ordinary breach-of-contract claims. 2021 WL 1422935, at *4. Courts have employed various standards in different contexts. *Id.* In contexts most closely resembling schools' transition to virtual education in response to COVID-19, they have employed the standard set forth in *Beukas v. Board of Trustees of Fairleigh Dickinson University* (*Beukas I*), 605 A.2d 776 (N.J. Super. Ct. L. Div. 1991). *Dougherty*, 2021 WL 1422935, at *4–5; *see also Mitelburg v. Stevens Inst. of Tech.*, Civ. No. 21-1043, 2021 WL 2103265, at *3–5 (D.N.J. May 25, 2021) (agreeing with *Dougherty*);

7

*Fittipaldi v. Monmouth Univ.*, Civ. No. 20-5526, 2021 WL 2210740, at *9 (D.N.J. June 1, 2021) (same). Under that standard, I review "the bona fides of the [school's] decisionmaking and the fairness of its implementation." *Beukas I*, 605 A.2d at 785. In doing so, I pay close attention to whether that decision was arbitrary, made in bad faith, or lacking in fair notice. *Id.* at 782. This standard also applies to unjust enrichment and conversion claims. *Id.* at *8–9.

Here, the Amended Complaint does not allege facts that plausibly show that Lincoln Tech failed to meet its obligations under *Beukas*.[5] The Amended Complaint acknowledges, and it can hardly be denied, that the move to virtual learning was occasioned by the COVID-19 pandemic. (Am. Compl. ¶ 10.) Because Lincoln Tech's decision was supported by public health concerns and compliance with the law, it was fair and not arbitrary. *Dougherty*, 2021 WL 1422935, at *6; *see Beukas I*, 605 A.2d at 782, 784 (circumstances beyond the university's control supported decision to close program). Nor can Gaviria plausibly allege that the decision to move to virtual education was unreasonable, because he has not alleged that any reasonable alternatives existed. *Dougherty*, 2021 WL 1422935, at *6; *see Beukas I*, 605 A.2d at 784 (suggesting that the university could have been liable if there had been reasonable alternatives).

Gaviria nonetheless alleges that even if Lincoln Tech's actions cannot be faulted, he is still entitled to a partial refund, future discounts, or credits, all reflecting the difference in value of the education he expected versus what he received. (Am. Compl. ¶¶ 10–11.) I have explained elsewhere why this narrower theory fails:

> In *Gourdine* [*v. Felician College*, No. A-5248-04T3, 2006 WL 2346278, at *4 (N.J. Super. Ct. App. Div. Aug. 15, 2006) (per curiam)], the court rejected claims for a tuition rebate and held that *Beukas* did not require any specific actions by the college to discharge its obligations, although "the manner in which the institution sought to ease the closing of the program [ ] must be

---

[5] Gaviria does not raise any argument that the standard should differ here because Lincoln Tech is a for-profit institution, so I do not address that issue.

8

> considered in the context of whether the institution acted in good faith." 2006 WL 2346278, at *5. In short, the issue comes back to whether the response the university adopted was reasonable in the circumstances. *See id.*; *Beukas I,* 605 A.2d at 784. Moreover, it is not as if the University simply defaulted on its educational obligations. Rather, the University tried its best to provide students with an education, albeit in a different format. The [plaintiffs] may contend that such a format was not worth the same tuition money, but *Beukas* affords the University some leeway, particular when reacting to events beyond its control. Accordingly, it is not plausibly alleged that the [plaintiffs] could overcome the *Beukas* standard.

*Dougherty*, 2021 WL 1422935, at *7. The same reasoning applies here.[6]

The only allegation Gaviria adds that was not present in *Dougherty* is that Lincoln Tech "itself recognizes the distinction between online-only and in-person education" because its new course catalogs designate courses as offering in-class instruction, online instruction, or a mix of both. (Am. Compl. ¶ 51.) This allegation, however, is unremarkable. No one disputes that in-person and virtual education are different. This allegation would be helpful if, say, Lincoln Tech now charged a lower tuition for online or mixed courses, yet did not offer a rebate for students previously forced to shift into virtual education. In that case, one could infer arbitrariness because Lincoln Tech reduced costs for remote courses for one semester but not for another. *See Fittipaldi*, 2021 WL 2210740, at *9. But a school's bare and common-sense acknowledgement that in-person and virtual education are different does nothing to overcome the *Beukas* standard.

---

[6] I understand that the difference in value between an in-person and virtual education may be particularly severe in the context of a vocational school. But courts have applied the *Beukas* standard to reject claims in contexts equally dependent on an in-person experience. *See Beukas I,* 605 A.2d at 779 (dental school); *Gourdine*, 2006 WL 2346278, at *4 (nursing program); *Dougherty*, 2021 WL 1422935, at *1 (fine art program). Thus, while Gaviria's circumstances are more sympathetic than those of, say, a mathematics major, they do not change the result.

9

Accordingly, for similar reasons to those I gave in *Dougherty*, Gaviria's claims for tuition cannot plausibly overcome the *Beukas* standard and so they must be dismissed.

### b. Enrollment Agreement

Even if, for purposes of argument, I analyzed Gaviria's claim for tuition as an ordinary contract claim, it would fail under the terms of the Enrollment Agreement. If, within the materials relied upon by the student as a contract, an educational institution includes a provision reserving its right to modify modes of instruction, that provision is enforceable. It serves to bar any contract claim to which its language applies. *Dougherty*, 2021 WL 1422935, at *7 (citing *Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.* (*Beukas II*), 605 A.2d 708, 709 (N.J. Super. Ct. App. Div. 1992) (per curiam)); *see also Zhao v. CIEE Inc.*, --- F.4th ---, No. 20-1878, 2021 WL 2643410, at *4 (1st Cir. June 28, 2021) (enforcing a limitation of liability clause to affirm a dismissal of a complaint seeking a refund of tuition based on COVID-based limitations on instruction).

Here, Lincoln Tech points to two provisions in the Enrollment Agreement. The broader of the two provides that Lincoln Tech is released from claims that it did not perform if such non-performance was due to "an Act of God, strike or any other matter or thing beyond [its] control." (Agmt. at 9.) I doubt this provision could absolve Lincoln Tech of liability, for two reasons.

First, it is debatable that this language should cover closures pursuant to government orders regarding COVID-19. On one hand, New Jersey courts have, at times, defined an "act of God" broadly to "comprehend[] all misfortunes and accidents arising from inevitable necessity." *Facto v. Pantagis*, 916 A.2d 59, 62 (N.J. Super. Ct. App. Div. 2007) (quoting *Meyer Bros. Hay & Grain Co. v. Nat'l Malting Co.*, 11 A.2d 840, 841 (N.J. 1940)). One court has also held that, whatever the limits of "act of God," residual language like "other unforeseen events" can sweep in any contingencies that "act of God" might not cover. *Id.*

While those interpretations bode well for Lincoln Tech, New Jersey courts have, at other times, limited an "act of God" defense to circumstances where

10

the event is "the sole cause of damage." *Meyer Bros.*, 11 A.2d at 841; *see also Bachman Chocolate Mfg. Co. v. Lehigh Warehouse & Transp. Co.*, 62 A.2d 806, 807 (N.J. 1949). Reasoning from similar cases, one federal court has offered good reasons that COVID-19 does not qualify, because the issue is not harm from the virus itself, but rather from human responses to it. *Dominion Energy Cove Point LNG, L.P. v. Mattawoman Energy, LLC*, No. 20-cv-611, 2020 WL 9260246, at *8 (E.D. Va. Oct. 20, 2020); *accord, e.g., Gear v. Gray*, 37 N.E. 1059, 1061 (Ind. Ct. App. 1894) (closing of a school by order of a school board or health board because of an outbreak is not an act of God). As a thorny issue of state law with potentially wide-ranging consequences, it is best for this federal court to avoid ruling if another provision can resolve this case—which it can. (*See infra.*)

Second, even if this act-of-God provision covered the circumstances here, Lincoln Tech would still have to refund Gaviria something. That is, a force majeure clause excuses performance and defeats a breach-of-contract claim, but equity requires that a defendant return any payment he or she already received for that anticipated performance. *Facto*, 915 A.2d at 63. Determining the amount of payment to be returned is a fact issue which I could not resolve on these pleadings. *Petrozzi v. City of Ocean City*, 78 A.3d 998, 1007 (N.J. Super. Ct. App. Div. 2013). All said then, the application of this force majeure provision is not so clear.

I turn to the second provision of the Enrollment Agreement cited by Lincoln Tech. The Agreement grants Lincoln Tech "the right to alter . . . curriculum content," and provides that such changes do not require any refund. (Agmt. at 9.) I apply the plain language of the contract. *Barila v. Bd. of Educ. of Cliffside Park*, 230 A.3d 243, 255 (N.J. 2020). "Curriculum" means "the courses offered by an education institution" *Curriculum, Merriam-Webster Dictionary* (online ed.), or "course of study" *Curriculum, Oxford English Dictionary* (online ed.). "Content," as used here, means "substance" or "the matter dealt with in a field of study." *Content, Merriam-Webster Dictionary*

(online ed.). Together, the ordinary meaning of "curriculum content" is the substance of matters dealt with in courses at Lincoln Tech.

This is a broad definition, so it plausibly encompasses the changes made here. For example, the Amended Complaint alleges that hands-on, in-person training exercises were replaced by recorded lectures. (Am. Compl. ¶¶ 48–50.) That surely was a change to the "substance" of the course. Put differently, one can infer that the changed instruction altered both the substance and manner of presentation of the covered topics. (*See id.* ¶ 49 ("[T]he online-only learning options . . . were materially different in practically every aspect . . . .").)

In response, Gaviria argues that I cannot consider the Enrollment Agreement at this stage, because the Amended Complaint does not rely on the Agreement, but alleges that a whole collection of documents formed the basis of his contractual arrangement with Lincoln Tech. (Opp. at 7–10.) He is incorrect. For starters, I can consider the Agreement because it is "integral to" the Amended Complaint. *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation omitted). The Amended Complaint alleges that "numerous documents" from, among other things, "the registration process, the payment process, and throughout enrollment" form the contract. (Am. Compl. ¶ 40.) The Enrollment Agreement surely falls within that very broad description. That Gaviria does not explicitly mention the Agreement is of no importance because "what is critical is whether the claims in the complaint are 'based' on an extrinsic document," and "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). In short, plaintiff cannot assert a vague breach-of-contract while excluding consideration of the actual, integrated, written contract between the parties.

The Enrollment Agreement provides that it "constitutes the entire contract between the parties." (Agmt. at 9.) When parties express in writing that they intend that written instrument to represent the only agreement between them, I cannot consider other materials. *Harker v. McKissock,* 96 A.2d

660, 665 (N.J. 1953); *see also Catlin Ins. Co. v. Flight Light Inc.*, No. A-0689-13T3, 2014 WL 3407055, at *7 (N.J. Super. Ct. App. Div. July 15, 2014) (per curiam). Accordingly, I will not deny the motion to dismiss on the basis of the plaintiff having crafted the breach-of-contract allegations to supposedly exclude consideration of the actual contract at issue.

\* \* \*

In sum, all claims seeking tuition fail for two independent reasons: (1) the *Beukas* standard governs such claims, and Gaviria has not alleged facts to overcome that standard, and (2) even if this is treated as a standard breach-of-contract case, the Enrollment Agreement allowed Lincoln Tech to make the changes here.[7] To the extent the Amended Complaint seeks damages representing a total or partial refund of tuition charges, the motion to dismiss will be granted.

### 2. Fee Claims

The fee claims stand on different footing. As I explained in *Dougherty*, no New Jersey courts have discussed such fees, and *Beukas*'s concerns about intrusion upon a university's pedological mission are not present when the university acts as, *e.g.*, a building proprietor. *Dougherty*, 2021 WL 1422935, at *11. As a result, fee claims do not merit the *Beukas* treatment. *Id.*; *see also Mitelberg*, 2021 WL 2103265, at *5. I therefore apply normal breach-of-contract standards.

A breach-of-contract claim requires "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Atl. Salt, LLC v. Morris Cnty. Coop. Pricing*

---

[7] The unjust enrichment and conversion claims fail even if the *Beukas* standard does not subsume them because (1) an express contract prevents recovery on an unjust enrichment theory, and there is no reason for alternate pleading here, *see Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, --- F. Supp. 3d ----, ----, Civ. No. 18-10675, 2021 WL 303030, at *5 (D.N.J. Jan. 29, 2021), (2) a conversion claim cannot seek to recover the damages which Gaviria seeks here, *Dougherty*, 2021 WL 1422935, at *9.

*Council*, 964 F.3d 218, 226 (3d Cir. 2020) (citation omitted). Here, Gaviria paid registration, student, and technology fees. (Am. Compl. ¶ 16.)[8] The Enrollment Agreement contains provisions relating to those fees, and as a written, integrated agreement, it governs. The Agreement states multiple times that the registration fee is non-refundable. (Agmt. at 8, 9.) Nor is there any injustice in honoring that provision; the costs of processing registrations, intended to be covered by that fee, do not depend on whether instruction occurs in person or online. Accordingly, the Agreement bars Gaviria from recovering the registration fee.

As to the remaining fees, the Agreement explains that the student fee is "for consumable supplies as used in the Program and [to] cover the Administrative Processing fee for student injuries as well as costs of handling I.D. Cards, Permits and the Student Handbook." (*Id.* at 8.) The technology fee "covers the computer & network services." (*Id.*) The Agreement further provides that, after the third day of classes, "any refund due for student fees and technology fees will be prorated based upon use." (*Id.*)

Here, Gaviria has a plausible contract claim. The Agreement entitles him to a refund "based upon use." The complaint does not establish what portion of these fees were "used." Because the fees go to program supplies and on-campus technology services, it is plausible that Lincoln Tech, after closing the campus, did not incur all of the expenses that these fees are meant to cover. Discovery may be needed to determine how much of these fees should be refunded. For now, it is plausibly alleged that, by refusing to refund Gaviria *any* amount, Lincoln Tech breached its obligation to provide some pro-rated amount. And Gaviria suffered damages because he has not received a partial

---

[8]   I limit my analysis to the fees which Gaviria paid because, at the motion to dismiss stage, the focus is on whether *he*, not the absent class, has a claim. *See Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("[T]o be a class representative on a particular claim, the plaintiff himself must have a cause of action on that claim.").

refund he is entitled to under the Agreement. Accordingly, he has stated a breach-of-contract claim.

Gaviria likewise can state an unjust enrichment claim. Although a plaintiff cannot recover on both theories, unjust enrichment claims can be pleaded as an alternative, or backup, to a contract claim. *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, --- F. Supp. 3d ----, ----, Civ. No. 18-10675, 2021 WL 303030, at *5 (D.N.J. Jan. 29, 2021). Alternative pleading is appropriate here because it is not yet clear whether Lincoln Tech may be able to defeat an express contract claim. Lincoln Tech argues, for example, that it was excused from contractual performance under the doctrine of impracticability. (Reply at 3.) I will not rule on that argument because it is raised for the first time in a reply, *Gap Props., LLC v. Cairo*, Civ. No. 19-20117, 2020 WL 7183509, at *8 (D.N.J. Sept. 17, 2020), and involves an affirmative defense requiring factual development, *Gaetano v. Gilead Scis., Inc.*, --- F. Supp. 3d ----, ----, Civ. No. 21-01418, 2021 WL 1153193, at *11 (D.N.J. Mar. 26, 2021). For present purposes, it suffices to say that, *if* Lincoln Tech were later to succeed on that argument, Gaviria might still be permitted to recover in equity. *Petrozzi*, 78 A.3d at 1007; *Facto*, 915 A.2d at 63. So unjust enrichment will remain as a viable alternative theory.

Gaviria cannot, however, pursue a conversion claim to recover fees. His conversion claim is no different from his contractual claim or a claim over a "mere debt," so it is not cognizable as a conversion. *Dougherty*, 2021 WL 1422935, at *12 (citation omitted). So Count 3, already dismissed as to tuition, is dismissed as to fees as well.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is granted in part and denied in part. Count 3 will be dismissed in its entirety. Counts 1 and 2 will be dismissed to the extent they seek tuition or a registration fee.

A separate order will issue.

Dated: July 8, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**